UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV629-J

CHICKETTE NESBITT                                                         PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                          DEFENDANT

MEMORANDUM OPINION

Before the Court is the complaint of Chickette Nesbitt ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and this matter remanded for further proceedings.

PROCEDURAL HISTORY

On January 10, 2005, Claimant filed application for supplemental security income. After a hearing, Administrative Law Judge Ronald Kayser ("ALJ") determined that claimant's bipolar disorder, sleep apnea and obesity were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found that she retained the residual functional capacity for jobs existing in significant numbers. This became the final decision of the Defendant on all applications when the Appeals Council denied review on November 14, 2008.

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative

proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. <u>Elam v. Commissioner</u>, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. <u>NLRB v. Columbian Enameling and Stamping Co.</u>, 306 U.S. 292 (1939); <u>Foster v. Bowen</u>, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

ARGUMENTS ON THIS APPEAL

The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially. At Step Three, if the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. <u>Lankford v. Sullivan</u>, 942 F.2d 301 (6th Cir. 1991).

Plaintiff argues that the ALJ erred in failing to accept the December 2005 opinion of Dr. Craig Meek, her treating psychiatrist, that she met the elements set forth in Listing 12.04. Plaintiff's counsel provided Dr. Meek with a checklist form of the items included in Listing 12.04. Dr. Meek checked that his patient suffers from anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight gain, sleep disturbance (decrease), retardation, decreased energy and feelings of guilt or worthlessness. Dr. Meek also checked that the symptoms result in "marked restriction of activities of daily living," "marked difficulties in maintaining social functioning," "deficiencies of concentration, persistence of pace," and "repeated episodes of

deterioration or decomposition." Tr. 209.

At Step three of the sequential evaluation process, the inquiry is whether the claimant has a medical condition that meets or exceeds the impairments listed in the Listings. If the plaintiff carries the burden of establishing that s/he meets a Listing, the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991), Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987), Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986). To meet a listing, a claimant must present *specific medical evidence* to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925.

Addressing the checklist, the ALJ relied on what he believed to be inconsistencies between the items on the checklist and Dr. Meek's treatment records. For example, on October 3, 2005, the medical staff note recorded an almost normal mental status assessment (although with somewhat sad mood), and noted that Ms. Nesbitt reported "sleeping better." Tr. 514. Again on October 17, 2005, the medical staff note recorded only mild impairment of judgment/insight, normal/euthymic mood, intact memory/concentration, appropriate affect, and cooperative attitude. Tr. 510.

On the other hand, throughout this period of treatment, the records reflect continuing concern about auditory hallucinations, which never seemed to entirely disappear, although the voices sometimes declined to "just a whisper." On March 10, 2007, Dr. Meek again affirmed – consistent with his checklist responses – that Ms. Nesbitt needed "nearly constant aid from her husband and other supportive persons in order to function and accomplish even simple daily tasks," and was

"virtually paralyzed in social settings outside her own immediate family." Tr. 658. Yet his psychiatric progress note date only two months earlier records Ms. Nesbitt's comment, "I'm doing alright," and records her psychiatric status as "normal" in all areas except "attitude." Tr. 659.

Given the directive to interpret the Listings very strictly, the Court is of the opinion that the possible ambiguity in Dr. Meek's office records prevent award of benefits at Step Three. Thus, there was no error in the ALJ's proceeding to Step Four.

At this step, the question is whether the ALJ accorded the appropriate weight to the opinion of the treating physician. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S

404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

In declining to give controlling weight to Dr. Meek's opinion, the ALJ pointed to the report of consultant Dr. Stewart, who performed a psychological examination in December 2006. Significantly, given Dr. Meek's concern about settings outside Ms. Nesbitt's own family, Dr. Stewart was a stranger to plaintiff. Nonetheless, Dr. Stewart observed normal ability to follow directions, to process the tasks, and to sustain attention and concentration. Her affect was appropriate, and she was cooperative. Tr. 650. Dr. Stewart determined that the diagnosis of bipolar disorder type I was appropriate, and her condition was of moderate severity. Intellectually, she functioned in the low average range. In the areas of adaptive functioning (the matters addressed by Dr. Meek's opinion), Dr. Stewart assessed her as below average, and he concluded that she was "moderately to markedly impaired." Tr. 654.

The Commissioner invites us to read Dr. Stewart's report as contradicting Dr. Meek's opinion, but it is difficult to read them as inconsistent: Dr. Meek opined marked impairment, and Dr. Stewart opined moderate to marked impairment. To support his rejection of Dr. Meek's opinion, the ALJ relied on the opinion of Dr. McKeown, a non-examining psychologist (not a psychiatrist) who reviewed the records and testified at the hearing that Ms. Nesbitt's impairment was only mild

5

to moderate. Tr. 823. It must be noted that what Dr. McKeown had available to him were the records and opinions of Dr. Meek, and the consulting report of Dr. Stewart. Dr. McKeown was strongly of the opinion that Dr. Meek's office notes do not indicate significant difficulties and are, therefore, irreconcilable with Dr. Meek's opinion statements. Tr. 783.[1] Dr. McKeown does not, however, suggest any explanation for why Dr. Stewart's conclusions are in essential conformity with Dr. Meek's opinions (and at odds with Dr. McKeown's interpretation).

Dr. McKeown does not hesitate to suggest that the level of medication prescribed for the patient does not indicate the level of impairment described by her doctor, although Dr. McKeown is not a medical doctor and does not have the expertise or authority to prescribe medication. Furthermore, Dr. McKeown misread the dosages of most of Ms. Nesbitt's medications. For example, he said she was taking 30 mg of Zimbalta, which was a low dose. After counsel pointed out that the prescription called for her to take 30 mg *three times a day*, he corrected his testimony to 90 mg. Tr. 820. The testimony went through the same process as to each medication.

Another interesting area concerns Global Assessment of Functioning scores. Dr. McKeown has his own explanation of the source and meaning of GAF scores. He testified that GAF score is based solely on the patient's self-report. However, according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32.

---

[1] One difficult term that appears repeatedly in the records is "stable." It is difficult to know whether in context this term means "staying the same," or "functioning well," and the two would clearly have very different implications in a social security disability review. Without explanation, Dr. McKeown interprets "stable" as doing well.

Plainly, self-report would be a factor in what the DSM-IV envisions (as it is in any clinical evaluation in the psychological field), but the specific examples of symptoms at the various numerical ranges show that self-report is clearly not the sole factor. Similarly, the DSM-IV and Dr. McKeown disagree regarding the meaning of the numbers. The DSM-IV describes the GAF range of 41-50 as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Dr. McKeown, however, again without explanation, redraws the scale, testifying that "between 40 to 60 is considered moderate." Tr. 792. While there are well-recognized problems encountered in attempting to rely on GAF scores in social security disability cases, the situation presented here is different: Dr. McKeown *relies* on the number, but draws his own categories, different from those set out in the DSM-IV. That in itself could be confusing if Dr. McKeown were merely using his private scale in a clinical setting, but it results in a complete absence of credible evidence when he suggests that other professionals' numbers should be interpreted according to his private scale.

  For all of these reasons, the Court concludes that there is not substantial evidence of record to justify the total rejection of the treating psychiatrist's opinions. As noted above, the law in the Sixth Circuit is clear: "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir.

2007). Because of the ambiguity in Dr. Meek's office notes, this Court is unable to say that Dr. Meek's opinion should be accorded controlling weight. However, there is no indication that the ALJ accorded to Dr. Meek's opinion the "great deference" to which it was entitled. In addition, the record reflects some confusion as to whether at the time of the final hearing herein Ms. Nesbitt's condition had improved such that she was no longer seeing a psychotherapist on a regular basis. Accordingly, this matter will be remanded for further proceedings not inconsistent with this opinion.

An order in conformity has this day entered.

.